**Stephanie BAUER, Plaintiff,**

v.

**John E. FOLEY, District Director of the United States Internal Revenue Service, Buffalo District, and the United States of America, Defendants.**

**Civ. 11830.**

United States District Court
W. D. New York.

May 15, 1968.

---

L. Robert Leisner, Buffalo, N. Y., for plaintiff.

Thomas A. Kennelly, Acting U. S. Atty. (C. Donald O'Connor, Buffalo, N. Y., of counsel), for defendants.

HENDERSON, Chief Judge.

The plaintiff has commenced this action to enjoin the government from seizing and selling her property and to have the assessments made against her declared void. The government opposes the application for the injunction and has moved to dismiss, claiming that the complaint fails to state a cause of action upon which relief can be granted; that the action is barred by the doctrine of sovereign immunity; that section 7421 (a) of the Internal Revenue Code of 1954 prohibits the relief sought and deprives this court of jurisdiction; and that the seizure and contemplated sale, under the circumstances, do not deprive the plaintiff of due process of law.[1]

On October 2, 1963, by certified mail, a single joint notice of deficiency was sent to Stanley J. Bauer and Stephanie Bauer at their last known address, 105 St. Mary's Road, Buffalo, New York. No notice had been received by the government indicating that they had established separate residences, and the papers before the court indicate that both the plaintiff and her husband resided at that address until some time in 1965. Tax deficiencies, including penalties totaling $135,425.89, were assessed against the

---

1. While the tax assessments in question are made for years considerably long past, it is to be noted that there has been negotiation between the parties to this action. Oral arguments were held before the court on March 4, 1968, and the opposing parties were allowed until March 14, 1968, to submit any additional briefs. Briefs were received by the court on March 18, 1968.

plaintiff and her husband for the years 1950 through 1957, inclusive on January 24, 1964, and a notice and demand for payment were mailed to their last known address.

The complaint of the plaintiff alleges that she resides at the aforementioned address; that she married Stanley J. Bauer and that they lived as husband and wife for many years; that from 1949 to the present she has earned no taxable income and filed no income tax returns; that Stanley J. Bauer signed her name on federal income tax returns for the years 1950 through 1957, inclusive, *or* if any returns were signed by Stephanie Bauer, it was under the absolute force and duress of her husband and in complete ignorance of the returns and their contents; that she never received any notice that the government was making an assessment; that her property has been seized and that the seizures were made without notice on illegal assessments based on forged or coerced tax returns, without due process of law and in contravention of the Fifth and Eighth Amendments of the Constitution. She further alleges that her health has been impaired and aggravated by the action of the government; that she suffers from a bleeding ulcer which has necessitated numerous transfusions and caused aggravation of a neurological condition; that she is without funds to pay the assessment and sue for a refund and, therefore, has no adequate remedy at law.

The government, in support of its motion to dismiss, has supplied the court with an affidavit of the defendant, John E. Foley, District Director, stating that an individual tax return bearing the signature of "Stanley J. Bauer" was filed in 1950 and that a joint return bearing the signature "Stanley J. Bauer" *only* was filed in 1951. The affidavit also states that joint federal income tax returns bearing the signatures "Stanley J. Bauer" and "Stephanie Bauer" were filed for the years 1952 through 1957. Certified copies of the returns, notices that were mailed to the aforementioned address and other relevant papers are attached to the affidavit of the District Director. The government, on July 11, 1966, abated the assessments made against Stephanie Bauer for the years 1950 and 1951.

Plaintiff first attacks the assessments made against her as illegal on the grounds that she did not receive due process of law. The argument is that the government sent a single joint notice to Stanley J. Bauer and Stephanie Bauer as provided by section 6212(b) (2) of Title 26 U.S.C. Plaintiff submits that this was improper since there was no joint return because the wife's signature on the return was forged and/or coerced. This argument of the plaintiff, if sound, would require the government in advance to anticipate that the issues of forgery and/or coercion would be raised. In this case, there were joint income tax returns filed for the years 1952 through 1957, inclusive, which on their face were signed by both husband and wife. Therefore, the single joint notice, mailed by the government to the taxpayers at their last known address, complied with the statute. Title 26 U.S.C. § 6212(b) (2).

The plaintiff further argues lack of due process on the grounds that the plaintiff never actually received the notice of the deficiency. Assuming that to be true, there is no requirement of the Internal Revenue Code that there be actual receipt of the notice. See Pfeffer v. Commissioner of Int. Rev., 272 F.2d 383 (2d Cir. 1959); Brown v. Lethert, 360 F.2d 560 (8th Cir. 1966). The same is true of the notice requirement of section 6303(a) of the Internal Revenue Code. The affidavit of the District Director reveals that both notices were mailed in compliance with these procedures and also contains certified copies of the same. The plaintiff has not been denied due process.

The plaintiff calls upon this court to invoke its equity power to enjoin the government from collecting the assessed taxes. However, section 7421 (a), Title 26 U.S.C. generally precludes the court from entertaining such a suit.

The exception to this statutory direction was stated by the Supreme Court in Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) as follows:

> Nevertheless, if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and, under the *Nut Margarine* case, [Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932)] the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in "the guise of a tax." Id., at 509, 52 S.Ct. at 263.

> We believe that the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained. Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed. To require more than good faith on the part of the Government would unduly interfere with a collateral objective of the Act—protection of the collector from litigation pending a suit for refund. And to permit even the maintenance of a suit in which an injunction could issue only after the taxpayer's nonliability had been conclusively established might "in every practical sense operate to suspend collection of the * * * taxes until the litigation is ended." Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299, 63 S.Ct. 1070, 87 L.Ed. 1407. Thus, in general, the Act prohibits suits for injunctions barring the collection of federal taxes when the collecting officers have made the assessment and claim that it is valid. Snyder v. Marks, 109 U.S. 189, 194, 3 S.Ct. 157, 160, 27 L.Ed. 901, 903; 370 U.S. 7–8, 82 S.Ct. 1129, 8 L.Ed.2d 296–297.

The legislative policy regarding the statutory prohibition against injunctive action by the courts was expressed by the Fifth Circuit in Abel v. Campbell, 334 F.2d 339, at 343:

> The statutory scheme reveals that Congress considered which party should bear the burdens incident to judicial determination of tax liability. The choice was between (1) the risks of requiring the taxpayer to rely on the government's administrative assessment of tax liability pending judicial determination and (2) the risks of requiring the government to rely on the judgment of district courts acting on application for preliminary injunction pending final judicial determination of tax liability. Congress made its choice in the interest of the national fisc. The power of Congress to make this determination and to require its recognition by federal courts is an essential part of the broader power of Congress to assure the nation's fiscal responsibility.

The Second Circuit Court of Appeals, in Botta v. Scanlon, 314 F.2d 392 (1963), has indicated that suits for injunctive relief may be maintained only if a plaintiff meets the "double burden" of establishing (1) no adequate remedy at law and (2) "that under no circumstances could the Government ultimately prevail." Botta v. Scanlon, supra, at 394; Enochs v. Williams Packing & Nav. Co., 370 U.S. at 7, 82 S.Ct. 1125. Helvey v. Wiseman, 199 F.Supp. 200 (W.D.Okl.1961), relied upon by plaintiff, was decided prior to the *Williams Packing* and *Botta* cases and, to the extent that it may be at odds with those cases, is not authoritative. It may be noted, however, that the circumstances present in that case differ from those found here.

■ Here, there is no question but that the assessments of the commissioner were made in good faith. Moreover, the convenient alternative claims of forgery and/or coercion would appear substantially disputed by the government. These

issues are of ordinary liability and pure questions of fact.

Satisfied that the requirements of *Enochs* v. *Williams Packing & Nav. Co.*, and at least the second of the two burdens of *Botta* have not been met, the plaintiff's motion is denied and the government's motion to dismiss granted.

So ordered.